[Civ. No. 5932. Second Appellate District, Division One.—March 6, 1928.]

COUNTY OF LOS ANGELES et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and CAROLINE WOLHAUPTER, Respondents.

Everett W. Mattoon, County Counsel, and W. Sumner Holbrook, Jr., Deputy County Counsel, for Petitioners.

G. C. Faulkner for Respondents.

THE COURT.—An award was made by the Industrial Accident Commission against the petitioners and in favor of Caroline Wolhaupter for injuries sustained by her while serving as inspector at the election held in November, 1926. Mrs. Wolhaupter had been regularly appointed as such inspector by the board of supervisors of Los Angeles County

to serve at the polling place in Precinct No. 44 in the city of Santa Monica. A small real estate office was used as the polling place. In due time the work of counting the ballots commenced and continued all night until about 4:30 the next morning, when one of the lady members of the election board fainted. No water had been provided on the premises. In order to restore the lady who had fainted to consciousness, Mrs. Wolhaupter went to the lot of an adjoining oil station to get water from a faucet, a practice which had been followed during the day. In the darkness she walked into a service pit on this lot and suffered a broken collar-bone and other injuries. Petitioners now seek to annul the award made for these injuries.

Petitioners first contend that Mrs. Wolhaupter was not an employee of the county of Los Angeles within the meaning of the Workmen's Compensation Insurance and Safety Act, and therefore not entitled to the award made in her behalf. They cite the case of *City of Los Angeles* v. *Industrial Acc. Com.*, 35 Cal. App. 31 [169 Pac. 260], as authority for this contention. In that case an election officer was injured while carrying the returns to the city hall. The court held that as such officer he was not an employee within the terms of the act. The injuries of the election officer were received on June 6, 1916, and the decision was made October 17, 1917. The case was governed by the law in force at the time of the accident. A very important amendment to the act was passed in 1917 which clearly makes the decision cited inapplicable to the facts of the case now before us. Before the amendment of 1917 an employee was defined as follows: "Every person in the service of an employer as defined by section thirteen hereof under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens and also including minors, but excluding any person whose employment is both casual and not in the usual course of the trade, business, profession or occupation of his employer, and also excluding any employee engaged in farm, dairy, agricultural, viticultural or horticultural labor, in stock or poultry raising or in household domestic service." (Stats. 1913, p. 284.) By the amendment of 1917 the term "employee" is defined as follows: "Every person in the service of an employer as defined by section seven hereof under any

appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, *and all elected and appointed paid public officers,* and all officers and members of boards of directors of *quasi* public or private corporations, while rendering actual service for such corporations for pay, but excluding any person whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer, and also excluding any employee engaged in household domestic service, farm, dairy, agricultural, viticultural or horticultural labor, in stock or poultry raising and any person holding an appointment as deputy clerk, deputy sheriff or deputy constable appointed for the convenience of such appointee, who receives no compensation from the county or municipal corporation or from the citizens thereof for services as such deputy; . . . '' (Stats. and Amndts. of 1917, p. 831.)

It will be noted that the words ''and all elected and appointed paid public officers,'' appear in the amendment of 1917 and that they do not appear in the statute as in force at the time of the decision of *City of Los Angeles* v. *Industrial Acc. Com., supra.* ▮ Clearly an inspector at a general election is an appointed paid public officer. The reason for the change in the law is explained in *County of Monterey et al.* v. *Rader,* 199 Cal. 221 [47 A. L. R. 359, 248 Pac. 912], wherein it is pointed out that the legislature had in mind the ''legal and public controversies that grew out of the uncertain situation as to whether the sheriff (an elected officer) was entitled to compensation'' under the statute as it existed before 1917. The sheriff of Mono County had been killed in the discharge of his duties in July, 1915. An award having been made by the Industrial Accident Commission, a writ of *certiorari* was issued by the supreme court in October, 1916. The opinion annulling the award was filed August 27, 1917, but in the meantime the amendment had been passed. · As said in the Rader case: ''The legislature, with the purpose of saving such cases from the peril of annulment, extended the term 'employee' to include *elected heads* of public offices and inserted in the amendment of 1917 the italicized words ''*all elected and appointed paid public officers,*'' words not in the acts of 1911 and 1913,''

Petitioners next contend that Mrs. Wolhaupter was engaged when injured in an activity not growing out of nor incidental to her employment as election officer nor within the scope of her duties as such officer. We are of the opinion that the facts shown bring the case within the well-established rule that those acts of the employee necessary to his comfort, convenience, safety, or welfare while at work are acts incidental to the employment, and an injury sustained in the performance of such acts is an injury arising out of and in the course of that employment. In *Whiting-Mead Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [5 A. L. R. 1518, 173 Pac. 1105], an award was made to a workman who had placed a bandage soaked with turpentine upon his hand which had been slightly injured. The workman temporarily ceased his labor and struck a match for the purpose of lighting a cigarette. The saturated bandage ignited and the hand was seriously injured. In affirming the award the court reviewed a number of cases in which the award had been upheld where workmen had left their labors to secure refreshments, two of them being cases in which the employees had left the performance of their work to procure drinking water. The court said, quoting from *Archibald* v. *Ott*, 77 W. Va. 448 [L. R. A. 1916D, 1013, 87 S. E. 791] : "Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service . . . " It was the duty of Mrs. Wolhaupter and the other election officers to see that the ballots were counted. Manifestly this work could not properly or humanely proceed with one of the members of the board in a fainting condition. It was the duty of Mrs. Wolhaupter to endeavor to resuscitate the unconscious member so that the work of the board could be completed. If water had been provided in the room where the ballots were being counted, and if Mrs. Wolhaupter had secured such water and dashed it upon the face of the unconscious member, surely it could not be contended that such an act would not have been necessary to the life, comfort, or convenience of the stricken member. The rule is not altered by the fact that it was necessary to walk a short distance to procure water or that the employee seeking compensation was ministering to a fellow employee rather than to herself.

█ It is the final contention of petitioners that the employment of the applicant for compensation was casual in character and not within the business of petitioners. Respondent concedes that the employment was casual. Section 8 (a) of the act (1917) provides that in order to exclude an employee from the benefit of the act the employment must be "*both* casual and not in the course of the trade, business, . . . of his employer." Section 8 (c) provides that "the words 'trade, business, profession or occupation of his employer' shall be taken to include any undertaking actually engaged in by him with some degree of regularity. . . . " And section 69 contains this provision: "Whenever this act, or any part or section thereof, is interpreted by a court, it shall be liberally construed by such court with the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment. . . . " The petitioners are political subdivisions of the state government. All their powers are derived from the law and their duties are those fixed by law. The "business" of petitioners includes the performance of the duties prescribed by law. Among these duties is that of conducting elections, providing for polling places, appointing election officials, etc. Elections are held at dates fixed by law. Certainly it cannot be said that they are not held "with some degree of regularity." In counting the ballots cast at the election the officers of the election board were employed in the course of the business of the petitioners.

The award is affirmed.

Petitioners' application to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1928.

All the Justices present concurred.