[S. F. No. 14403. In Bank.—February 25, 1932.]

A. L. DALSHEIM, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, Respondent.

108

Karl F. Kennedy for Petitioner.

Arthur I. Townsend and Everett A. Corten for Respondent.

R. P. Wisccarver, *Amicus Curiae.*

THE COURT.—This proceeding was instituted to review and annul an award of the Industrial Accident Commission granting to one Hinman, an employee of the petitioner, compensation for injuries found to have been incurred in the scope of and during the course of his employment. After a hearing on the merits, the Commission found that "the evidence does not establish as a fact that the applicant received an injury arising out of and occurring in the course of the said employment". The employee subsequently petitioned for a rehearing, which was granted. A further hearing was had, and the Commission reversed its former holding, finding as a fact that the injury complained of had been sustained by Hinman "in the course of his employment, as follows: Suffered burns about the legs while putting out a fire", and based upon this finding awarded him compensation. It is this award that the petitioner seeks to have annulled in this proceeding.

The employer attacks the award on three grounds:

First, it is contended that the Commission was without power to grant the rehearing on the petition of the employee for the reason that the employer was not served with a copy of the petition as expressly required by section 64 (d) of the compensation act. The record shows, however, that after the rehearing was granted the employer was notified of the action of the Commission, and was likewise notified that a further hearing was to be held. At this hearing the petitioner was present in person and by counsel, and actively participated therein, both by producing witnesses and by the filing of briefs. Neither at the hearing nor in the written briefs filed with the Commission was objection ever made on the ground that the petitioner had not been served with a copy of the petition for rehearing. Petitioner presents this point for the first time in his petition for a writ of review. It does not appear how petitioner was in any way prejudiced by not having been served with a copy of the petition, and for that reason, and for the further reason that the objection is first urged before this court, we are of the opinion that the petitioner by his conduct has waived any right that he may have had to object to the granting of the petition for rehearing.

The second point raised by petitioner is based on the following facts: After the Commission had rendered its award on rehearing, reversing its former award, the employer petitioned for a rehearing of the award on rehearing. The Commission refused to consider this second petition for a rehearing on the ground that it had jurisdiction to entertain but one petition for a rehearing, and that its jurisdiction was exhausted by the granting of the employee's petition. Petitioner contends that the Commission had jurisdiction to consider his petition for a rehearing, and acted wrongfully in rejecting the same. He bases this contention on the fact that section 64 of the act gives any person *aggrieved* by a final award the right to petition for a rehearing, and points out that he was in no way aggrieved by the first award inasmuch as it was in his favor, and that it was not until the second award made on rehearing, and reversing the first award, that he became aggrieved by any award of the Commission. There would seem to be considerable logic in petitioner's position. The Commission

seeks to sustain its action on the authority of such cases as *Crowe Glass Co.* v. *Industrial Acc. Com.*, 84 Cal. App. 287 [258 Pac. 130], and *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 [228 Pac. 654]. In the Crowe Glass Co. case the Commission made an award in favor of the employee. The employer petitioned for and secured a rehearing. The Commission then rendered its decision on rehearing *affirming* the original award. The employer petitioned for a second rehearing, which was granted, and the Commission then reversed itself and made an award in favor of the employer. The court properly held that under the provisions of the act (secs. 64, 65 and 67) a person aggrieved has but one petition for a rehearing, and that the employer having once petitioned for such rehearing and the Commission having on such rehearing *affirmed* its original award, such employer had no right to petition for, and the Commission had no jurisdiction to grant, a second rehearing. We think that situation is readily distinguishable from a situation where the Commission first decides in favor of the employer; then the *employee* petitions for and secures a rehearing; then the Commission *reverses* itself and decides in favor of the employee. Obviously, for the first time, the employer has been aggrieved by an award of the Commission, and under section 64 of the act should be entitled to petition for a rehearing. Nor is the decision in the Harlan case, *supra*, necessarily opposed to this reasoning. In that case the Commission first rendered an award in favor of the employer. On petition of the employee the Commission reversed the original award and granted an award to the employee. The employer failed to petition for a rehearing but applied to this court for a writ of review. The court properly held that after one rehearing had been granted a petition for rehearing was not necessarily a condition precedent to an application for a writ of review. This did not necessarily decide that the Commission could not entertain a petition for rehearing from an award on rehearing when such award reverses the original award. It is true that section 64 of the act provides in effect that no cause of action shall accrue to any person until he first petitions for a rehearing, but section 67 provides that within thirty days after the application for a rehearing is denied, or if the application is granted within thirty days

after the rendition of the decision on the rehearing any party affected may apply for a writ of review. It is possible to reconcile these apparently conflicting provisions by holding that if a rehearing has been granted and on such rehearing the Commission reverses its original award then the party aggrieved by this last award may petition for a rehearing or may proceed directly to the appellate court on a writ of review. For the foregoing reasons we have grave doubts as to whether the Commission acted properly in rejecting the petition for rehearing on the ground it had no jurisdiction to consider the same. However, we do not find it necessary to determine that question on this proceeding for the reason that we are of the opinion that the award must be annulled for the third reason advanced by petitioner.

 This third contention goes to the merits of the case. It is contended that the injury suffered by Hinman did not arise out of, nor was it received in the course of his employment. The facts, as disclosed by the record, are as follows:

Hinman was employed as an automobile mechanic in a garage operated by petitioner. Catlin, Hackett and Leadham were likewise so employed. In the usual course of their employment it was necessary for such employees to use some liquid for the purpose of washing automobile parts and tools. Gasoline was usually used for this purpose. On the morning of May 22, 1930, Hinman went to a near-by gasoline service station for the purpose of purchasing some gasoline to be so used. He was told by the operator of the station that there was a new petroleum product which was not combustible or was noninflammable, and which sold for the same price as gasoline. The operator testified that he told Hinman that the fluid was non-explosive, but Hinman testified that the words "non-inflammable" were used. In support of the Commission's award this conflict must be resolved in favor of Hinman. Hinman purchased some of this liquid and put the same in an open bucket. Some time during the morning this bucket was placed upon an oil-soaked work-bench close to the sink where the employees, including Hinman, customarily washed their hands before going to lunch. According to the testimony of Hackett and Catlin, these two employees as well as Leadham had stopped work on the day in question, and

112

were cleaning up preparatory to going to lunch. While so occupied they laughingly engaged in a discussion as to whether the petroleum product purchased by Hinman would ignite or explode. Hinman testified that although these acts took place during the lunch hour, he had not yet quit work, but heard his fellow employees laughing and talking about the liquid, and then left his work in order to prove to himself and to his fellow employees that the liquid would not burn or explode. Hackett testified that Hinman then attempted to frighten Catlin in the following manner: Hinman, who was smoking a cigarette, threw the lighted cigarette into the open bucket containing the cleaning fluid and stated: "Look out, Bob". The cigarette failed to ignite the fluid and Hackett, according to his own story, lighted a small piece of paper and told Hinman to try that. Hinman thereupon threw the lighted paper in the bucket, causing the cleaning fluid to ignite. This story was corroborated by Catlin. According to all of the witnesses, including Hinman, the latter, after the fluid started to burn, placed an iron file in the handle of the bucket and attempted to carry it outside. When he reached the outside of the building he either stumbled or the bucket tipped, resulting in some of the burning liquid falling upon his overalls, igniting them and resulting in the injuries for which the Commission awarded compensation. Hinman does not deny that he threw the lighted cigarette in the bucket, and expressly admits that he did throw the lighted paper therein. He testified on direct examination that he performed these acts as part of an experiment in order to ascertain whether this fluid could be safely used near the welding apparatus, but subsequently admitted that he performed the act "just for my own and the other boys' satisfaction". On this state of the record the Commission denied an award to the employee on the theory that the injury was received while the employee was skylarking or engaged in "horse-play". On rehearing, on substantially the same evidence, the Commission reversed itself, evidently on the theory that although the original act of lighting the fluid had been conceived in "horse-play", the subsequent act of carrying the burning liquid outside was in protection of the employer's property, and must therefore be held to be within the scope of the employment. The Commission

did not make specific findings on these issues, as well might have been done in this case, but contented itself with the general finding that Hinman "sustained injury arising out of and occurring in the course of his employment", as follows: "Suffered burns about the legs while putting out a fire." However, from a reading of the entire transcript it is obvious that such was the theory of the Commission. In its reply brief the Commission clearly stated its position as follows:

"It is conceded that [the] injured's action in igniting the can of naphthene fluid was conceived in horseplay. However, we believe his action in removing the burning container to save the premises of his employer at once brought him back into the course of his employment because his motive in this action was a rendition of service to his employer . . . as soon as the applicant seized the bucket of burning liquid in order to carry it out of the premises he resumed the course of his employment and was entitled to be considered as an employee."

On the oral argument and in a brief filed subsequent thereto the Commission, while not abandoning the above theory, sought to evade the effect of the above concession by contending that the original act of lighting the fluid was within the scope of the employment. We are clearly of the opinion that the evidence will not sustain such a theory. The evidence points to the fact that Hinman ignited the fluid while skylarking and joking with his fellow employees. Even Hinman's testimony, when read as a whole and as explained on his cross-examination, indicates that the fluid was ignited for the purpose of satisfying his own and his fellow employees' curiosity as to whether the fluid would ignite or explode. Giving the testimony of Hinman its full weight, which we are obliged to do since the Commission made a general finding in his favor, such testimony shows that the act of lighting the fluid was in no way connected with his employment. At best, the act of lighting the fluid was a reckless attempt to gratify the curiosity of Hinman with the possibility, if his guess proved to be wrong, that the property of his employer would be burned, and with the possibility that he or his fellow employees might be injured if the fluid exploded or ignited. Such act had no reasonable relation to the employment. It must

be remembered that the Workmen's Compensation Act was not intended to make the employer an insurer of his employee at all times during the period of the employment. The act specifically provides that the employee is only entitled to compensation "where at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment". As was said by this court in *Coronado Beach Co.* v. *Pillsbury*, 172 Cal. 682, at page 685 [L. R. A. 1916F, 1164, 158 Pac. 212, 213]:

"The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work or to the risks to which the employer's business exposes the employee. The accident must be one resulting from a risk reasonably incident to the employment. . . . It 'arises out of' the occupation when there is a causal connection between the conditions under which the servant works and the resulting injury. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

The above test has been recently affirmed by this court. (*Pacific Employer's Ins. Co.* v. *Division of Industrial Acc. & Safety*, 209 Cal. 656 [289 Pac. 619].) Applying this test to the facts of the instant case we do not believe that under any theory the injury can be held to have "had its origin in a risk connected with the employment". If the original act was conceived in "horse-play" any injury received as a result thereof is clearly not compensable. (*Coronado etc. Co.* v. *Pillsbury, supra; Fishering* v. *Pillsbury,* 172 Cal. 690 [158 Pac. 215]; *Great Western Power Co.* v. *Industrial Acc. Com.,* 187 Cal. 295 [201 Pac. 931]; *Pacific Employer's Ins. Co.* v. *Division of Industrial Acc. & Safety, supra.*) If the act of igniting the fluid was an attempt to gratify the curiosity of Hinman, such act was not reasonably incident to the employment, and the injury did not arise therefrom, under the test already discussed.

Nor do we think that the nature of Hinman's act was changed because he was injured in the attempt to put out the fire after he had started it. This act can no more be held to have been within the contemplation of the employ-

ment and reasonably incident thereto than was the original act of lighting the fluid. Having started a chain of events the employee cannot be heard to say that in attempting to undo what he has started, or in the attempt to prevent further destruction by the agency which he had brought into existence, he thereupon, to use the words of respondent Commission, "resumed the course of his employment". The employee must be held to stand the risks of any injury received by him which directly and proximately result from an act of his not within his employment. This result necessarily follows from the cases above cited.

The award is annulled.

Rehearing denied.