[Civ. No. 1150.   Fourth Appellate District.—July 21, 1934.]

LOIS GAGNEBIN et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Leroy McCormick and J. A. Chase for Petitioners.

Everett A. Corten for Respondents.

BARNARD, P. J.—This is a proceeding to review a decision of the respondent commission denying compensation on account of the death of one Elden J. Gagnebin, who was the husband of one of the petitioners and the father of the other.

The respondent Gill operated several ranches in Madera and Fresno Counties and also a feed yard at Calwa, near Fresno. For some two years prior to the time here in question Elden J. Gagnebin was employed as a farm laborer by Gill and resided upon one of these ranches, which was located about sixteen miles east of the city of Madera. Upon this ranch, which consisted of about 5,600 acres, there were 550 head of cattle for which water had to be pumped by means of a gasoline engine. One A. C. Thompson was manager and foreman for all of the Gill properties in these two counties, and resided on another ranch some distance west of Madera. Under instructions from Thompson, Gagnebin went to the feed yard at Calwa on the morning of October 16, 1933, and spent the day there assisting in loading fertilizer. Leaving there at 6 P. M. he went to Madera,

and while proceeding from there to a pumping plant on the ranch where he lived, he received injuries in an automobile accident which resulted in his death.

After a hearing the respondent commission found that Gagnebin was in the employ of the respondent Gill at the time in question, that the third respondent was Gill's insurance carrier, that both employer and employee were subject to the provisions of the Workmen's Compensation, Insurance and Safety Act, and that the said employee had suffered injuries in a traffic accident on the highway about one and one-half miles from Madera. It was further found, however, that said injury did not arise out of or in the course of his employment and that the errand upon which the employee was engaged at the time of the accident was personal and not incidental to any service required by his employment. A rehearing was asked for on three grounds, namely: 1. That fraud on the part of the insurance carrier resulted in the petitioners being unrepresented by counsel at the hearing, in that an adjuster for the insurance company called upon the petitioner Lois Gagnebin and advised her, in effect, that she did not need a lawyer, that no one was fighting the case, that there would be no controversy, and that she would receive compensation. 2. That the evidence does not justify the findings of fact. 3. The discovery of new evidence. Attached to the petition for rehearing is an affidavit by A. C. Thompson, manager for respondent Gill, containing a number of material facts which were not brought out at the hearing. The respondent insurance company answered the petition for rehearing, and included an affidavit, the effect of which was to deny that any fraud was used in the respect claimed. A rehearing was denied and this proceeding followed.

The essential question here presented is whether the injury suffered by the deceased arose out of or in the course of his employment. It is undisputed that the direct way from Calwa to the ranch on which the deceased lived was over a road leading straight north from Fresno, a part of which was paved and a part of which was an ordinary country road, while the highway to Madera runs north-westerly from Fresno. The difference between the two routes, in mileage, is not disclosed by the record. At the hearing before the referee, petitioners were not represented

by counsel, although the insurance carrier was so represented. While the facts and circumstances in connection with the action of the deceased in going by way of Madera were the most essential matters in connection with the hearing, very few questions were asked concerning them and it appears from the record that the facts in that regard were not thoroughly gone into. This especially appears in the light of the manager's affidavit, which is a part of the petition for rehearing.

In *London G. & A. Co.* v. *Industrial Acc. Com.,* 190 Cal. 587 [213 Pac. 977], it is said: ''According to the provisions of that act an employee, in order to be entitled to compensation, must have been injured by an accident arising out of and in the course of his employment. As a general rule, injuries sustained while an employee is traveling to and from his place of employment are held not to come within the provisions of the act (*Ocean Acc. & G. Co.* v. *Industrial Acc. Com.,* 173 Cal. 313 [L. R. A. 1917B, 336, 159 Pac. 1041]; Bradbury's Workmen's Compensation, 3d ed., p. 468), although in a broad sense they may be said to be incidental to his employment. Exceptions to the general rule are cases where an employee, either in his employer's or his own time, is going to or from his place of employment on some substantial mission for his employer growing out of his employment. In such cases it is held that the employee is within the protection of the act. But the mission must be the major factor in the journey or movement, and not merely incidental thereto, that is to say, if incidental to the main purpose of going to or from the place of employment it would not bring such person under the protection of the act. If, on the other hand, the main purpose of going or coming was to perform some act arising out of his employment he would be under the protection of the act, although, incident to the performance of such duty, he might be going or coming from his home.''

In *Marks* v. *Gray,* 251 N. Y. 90 [167 N. E. 181], the court said: ''The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had

been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.''

■ The general rule that an employee is not within the provisions of the act while traveling to and from his place of employment is not applied in cases where the employee, in the course of his employment, is obliged to travel from one place of employment to another. (*Federal Mutual Liabilities Ins. Co.* v. *Industrial Acc. Com.*, 94 Cal. App. 251 [270 Pac. 992]; *Western Pacific R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 Pac. 754].) In such cases where an employee deviates from the direct route for a private purpose the question of whether he is then within the provisions of the act usually depends upon whether, under the circumstances, his mission for his employer is the major factor in the journey or whether the circumstances are such that it may be said that the employee has, for the time being, left the scope of his employment.

■ Examining the evidence before the respondent commission in the light of these rules, the following appears. The loading of fertilizer at Calwa was an annual occurrence and took about twenty days. In order to facilitate the same the manager of the ranches took for the purpose men who were familiar with operating the loading machinery. To this end he instructed the deceased to assist in this work. October 16, 1933, was the first day on which this work was done during that season and the deceased worked at Calwa from 6 o'clock A. M. to 6 o'clock P. M. The men thus engaged were paid an extra compensation for this period because the work required longer hours and to cover the cost of transportation or board and room at or near Calwa. While it was optional with most of the men whether or not they would go back and forth, the deceased was the only employee on the ranch where he lived and, since it was necessary for him to be there to run the engine to pump water for the cattle, the manager instructed him to return to the ranch each night and attend to his duties there. On the morning of this day the manager had taken another employee named Buckalew, who lived at the manager's home, to Calwa to take part in this work. About noon on October 16th the deceased told the manager that two of the tires on his automobile were in such bad shape

that he could not safely drive between the ranch and Calwa and that he was not financially able to procure new tires. He requested the manager's assistance in procuring the tires and, because of the importance of having him at Calwa on time in the morning and also having him on the ranch in the evening to operate the engine and pump, the manager agreed to buy the tires for him and deduct their cost from his pay check. It was necessary for the manager to go to Madera that afternoon to attend to some business matters for the ranches and to purchase feed for the stock. During the afternoon, and before he left, he suggested to the deceased that while in Madera he would arrange for the purchase of the tires and instructed the deceased to bring Mr. Buckalew to Madera after the day's work at Calwa was finished. The manager states that it was necessary for him to make arrangements for Buckalew's transportation to Madera, to himself wait at Calwa until the day's work was finished, or to return from Madera to Calwa for Buckalew. He also states that it was a great convenience to him to have the opportunity of transacting business in Madera that afternoon without the necessity of making 'a return trip to Calwa, and that he might have arranged for the deceased to bring Mr. Buckalew to Madera even if the tires were not to have been purchased. Acting upon the manager's instruction, the deceased brought Buckalew to Madera, arriving there about 7 P. M. He met the manager there at a service station and two tires were secured. Among his other duties the deceased was required to take gasoline to the ranch for the purpose of running the engine and was furnished a five-gallon can for that purpose. While at Madera the manager noticed that he had a can of gasoline in his car and instructed him to stop on his way home and start the engine and pump, which were located about three-fourths of a mile nearer to Madera than was the house occupied by the deceased. While on the direct route from Madera to the place where the engine and pump were located the accident happened with which we are here concerned.

At the time in question the deceased was proceeding from one place of employment to another upon the instruction of his superior. He had been ordered to come by way of Madera and to bring a fellow-employee. At Madera he was

instructed to take the gasoline to the ranch and to start the engine before proceeding to his home. Not only does it appear that at all times, under definite instructions, he was performing services for his employer, but, in our opinion, the matter of purchasing the tires does not, under the circumstances, constitute a deviation from the course of his employment. As far as the deceased was concerned, the tires could have been purchased at Fresno or at Calwa. They were purchased at Madera at the suggestion of the manager and for his convenience. While the deceased requested the manager's assistance in getting the tires, they became necessary at that time because without them the employee could not safely carry out his instructions to go back and forth between the two points of employment. If the matter of transporting a fellow-employee to Madera and transporting the gasoline to the ranch be left out of direct consideration, the matter of the purchase of the tires was a matter designed and intended to enable the employee to carry out a special phase of his employment, it was done in order to facilitate his work, the immediate end in view being a benefit to his employer, and each and every act in connection with the supposed deviation was done upon the direct order of his superior. It is also true that he was on a substantial mission for his employer at all times, and the purchase of tires for his own car was in fact merely incidental to the main purpose of carrying out the duties of his employment. The employee acted throughout under the instructions of his employer and, in our opinion, it can neither be said that any deviation from the direct route between the two places of employment was for ends entirely personal to the employee nor that the major factor in the journey was not a mission for his employer.

For the reasons given the findings and decision of the commission are annulled and the matter is remanded for further action in accordance with the views herein expressed.

Jennings, J., concurred.

Marks, J., being absent, did not participate herein.