[L. A. No. 18221.   In Bank.   July 28, 1942.]

ELETHA R. DILLARD, Appellant, v. CITY OF LOS AN-
GELES (a Municipal Corporation) et al., Respondents.

Cryer & Jones, George E. Cryer and R. Alston Jones for Appellant.

Ray L. Chesebro, City Attorney, and Robert J. Stahl and Edward J. Olstyn, Deputies City Attorney, for Respondents.

CARTER, J.—This is an appeal from a judgment denying a petition for a writ of mandate to compel the respondent city and the board of pension commissioners to place petitioner and her child on the pension rolls to which she claims she is entitled under the pension laws of the city by reason of her husband's death. The facts are undisputed.

Petitioner's husband, now deceased, was a regularly employed police officer of the city of Los Angeles. On the night of January 22, 1940, decedent, as a radio car patrolman, was on regular duty from 6 p. m. to 2 a. m.

At about 10:15 p. m. a suspect who was taken into custody while decedent and a fellow officer were patrolling, attempted to escape and in so doing struck decedent on the face and chest; the struggle extended over a considerable period of time. The prisoner was subdued and taken to a hospital where he and decedent were given medical care. They then proceeded to the central police station where the prisoner was left. While there decedent was pale and perspiring and appeared weak. His condition being observed by the desk sergeant, he was told to go home. He stated that he believed he could drive his own car home without assistance. He was taken by his fellow patrolman to a parking lot where his car was parked. He was left there about 12:10 a. m. At about 12:40 a. m. his car collided with an automobile parked at the curb about forty feet south of an intersection. A person hearing the crash ran to the scene of the collision and found decedent slumped over his steering wheel unconscious but still alive. He died shortly thereafter.

The autopsy surgeon of Los Angeles found that decedent was bruised about the body and limbs and his ribs were

fractured and his heart ruptured. The heart was fatty and the left descending coronary artery was sclerotic, its opening being reduced 95 per cent. A chemical analysis of the blood showed the presence of 25 per cent ethanol; that amount of ethanol indicated intoxication. He found the death to have been caused by "a crushing in of the chest and rupture of the heart, contributory to that being internal hemorrhage." In his opinion the decedent "had a chronic heart condition which had been developing over a period of years and was such as to render him subject to a heart attack at any time; that the amount of alcohol found was sufficient to indicate intoxication, and that there was no way to determine whether or not the accident could have been caused by the liquor or by the heart condition." Dr. Webb in his affidavit used on motion for a new trial stated that decedent's heart condition was such that he was subject to a heart attack at any time and under the facts as above stated the decedent was suffering from such an attack when he was at the central police station which "was the direct and natural result of the fight he had had with the prisoner in the radio car, in view of the heart condition revealed by the autopsy; that the deceased was so seriously ill at the time and in such precarious condition that he should never have been allowed to attempt to go home alone or to drive an automobile; that he was liable to lose consciousness at any moment and the collision which resulted in his death was what might well have been expected from a driver in his condition at the time." Dr. Anthony's affidavit was of similar report.

Decedent was sober and gave no indication whatsoever of having consumed any intoxicating beverage up to the time he was left at the parking lot. The presence of alcohol in his blood after the collision indicated that it must have been consumed in the thirty minutes from the time he was left at the parking lot until the collision. With reference thereto Dr. Anthony stated in his affidavit: "that in the opinion of affiant the taking of liquor under the circumstances was the not unnatural act of a man in the exhausted and weakened condition of said deceased at the time, in an effort to stimulate himself for the drive to his home; it was the act of a stricken and dying man to bolster his waning strength for further effort."

The city charter provision in question reads: "Whenever any member of the Fire or Police Department shall die as

a result of any injury received during the performance of his duty, or from sickness caused by the discharge of such duty . . . then an annual pension shall be paid in monthly installments to his widow, or child or children. . . .'' (Los Angeles City Charter, § 183.)

█ Pension laws should be liberally construed and applied to the end that the beneficent policy thereby established may be accorded proper recognition. (*Casserly* v. *City of Oakland*, 215 Cal. 600, 603 [12 P. (2d) 425]; *Klench* v. *Board of Pension Fund Commrs.*, 79 Cal. App. 171 [249 Pac. 46]; *O'Dea* v. *Cook*, 176 Cal. 659 [169 Pac. 366]; *Aitken* v. *Roche*, 48 Cal. App. 753 [192 Pac. 464].) That rule should be kept in mind in the determination of this appeal.

█ Before considering the main point in question it should also be observed that under the circumstances here involved the fact that decedent's chronic heart condition from which he was suffering was a contributing cause which ultimately led to his death, does not bar the right to a pension where events occurring while in the performance of his duty caused the heart attack which led to his death. That is true regardless of whether or not the chronic condition originated while in the performance of his duty. The fact that a police officer had at the time of the injury a previous heart affliction does not of itself defeat his dependents' right to a pension if the injury precipitated his death by aggravating the heart condition. (*Buckley* v. *Roche*, 214 Cal. 241 [4 P. (2d) 929]; *Peters* v. *Sacramento City E. R. System*, 27 Cal. App. (2d) 10 [80 P. (2d) 179]; *Naughton* v. *Retirement Board of S. F.*, 43 Cal. App. (2d) 254 [110 P. (2d) 714].) As seen from the foregoing recital of facts the evidence shows without contradiction that the altercation decedent had with the prisoner in his custody and the blows there received caused decedent to have a heart attack from which he was suffering when at the central police station and thereafter.

█ Turning to the main contention in the case, that the evidence without dispute establishes that the case comes within the terms of the charter, that is, that decedent died as a result of an injury received during the performance of his duty, it is clear that the undisputed evidence leads to only one conclusion, that is, that the deceased died as the result of an injury received during the performance of his duty. The injury was received while decedent was strug-

gling with a prisoner and endeavoring to retain him in custody. That he was in the performance of his duty when he received that injury cannot be questioned. That his death resulted from that injury is equally clear. While it is true that the immediate cause of his death was the injury he received in the automobile collision, that collision was the result of the injury which brought on the heart attack. His condition was such, when he left the central police station, that he was on the verge of death from the heart attack brought on by the injury. He was in no condition to operate an automobile and should not have been permitted to do so. The medical evidence establishes that the automobile accident resulted from either the heart attack or the decedent having consumed an alcoholic beverage. Respondents argue that there are two possible inferences deducible from the evidence, that is, that the automobile accident resulted from the heart attack or that it was caused by the intoxication of the decedent, and in the latter event no pension is allowable. They point to the medical testimony that it could not be ascertained whether the automobile accident was caused by decedent's intoxication or the heart attack. They assert that no pension may be allowed when death follows an injury caused by the misconduct of the officer, and that becoming intoxicated is such misconduct. Assuming, but not deciding, that intoxication is misconduct which will defeat the right to a pension, the conclusion is not affected thereby. The evidence shows without contradiction that the consumption of the alcohol by the decedent must necessarily have occurred during a period of not over thirty minutes transpiring from the time he was left at the parking lot by his associate to the time of the automobile accident. There is no dispute that up to the time he was left at the parking lot he was sober and had not consumed any intoxicating beverage. His consumption of that beverage during that time was the natural act, as expressed by Dr. Anthony, ''of a stricken and dying man to bolster his waning strength for further effort.'' Therefore, it follows that the injury which caused the heart attack also caused the consumption of the beverage which resulted in the condition of intoxication. Thus, it is immaterial whether the automobile accident which was the immediate cause of the death was the result of intoxication or the heart attack. The former was the result of the latter which was

caused by an injury received during the performance of duty. It is all traceable to the initial impetus, the injury, which brought on the heart attack. The situation is not dissimilar to the case of an employee who suffers an injury in the course of his employment and takes what he believes to be medicine to relieve his condition temporarily, but the medicine turns out to be a deleterious substance and causes serious injury or death. Such injury or death may be said to have occurred in or arisen out of his employment.

The possibility that the automobile accident occurred as the result of decedent's negligence rather than the heart attack or intoxication is removed from the case by the presumption that decedent was not negligent. (Code of Civ. Proc., § 1963(4).) There was no other actor in the automobile collision inasmuch as decedent collided with a car parked at the curb.

Analogous to the case here presented are those cases in which the rule is stated to be that an employee is entitled to compensation under the workmen's compensation laws for a new or aggravated injury which results from the medical or surgical treatment of an industrial injury, whether the doctor was furnished by the employer, his insurance carrier, or was selected by the employee. (*Fitzpatrick* v. *Fidelity & Casualty Co.*, 7 Cal. (2d) 230 [60 P. (2d) 276] ; *Sarber* v. *Aetna Life Ins. Co.*, 23 F. (2d) 434; cases collected 39 A. L. R. 1276; 127 A. L. R. 1108.) If the intervening act of a physician selected by the employee causing a new injury does not break the chain of causation, it certainly is not broken where a person, stricken and dying from an injury received in his employment, is killed when endeavoring to reach a place of safety in his automobile. In the Fitzpatrick case the Sarber case is quoted with approval at page 234:

" ' . . . under the great weight of authority the employer is liable for all legitimate consequences following an accident, including unskilfulness or error of judgment of the physician furnished as required, and the employee is entitled to recover under the schedule of compensation for the extent of his disability based on the *ultimate result of the accident, regardless of the fact that the disability has been aggravated and increased by the intervening negligence* or carelessness of the employer's selected physician.' The reasonableness of this principle is patent." (Emphasis added.) In the case at bar the pension act is at least as comprehensive as the Work-

mens' Compensation Act, and the ultimate result, that is, death, caused by the injury sustained, is the natural consequence of that injury.

In addition to the foregoing, petitioner's recovery may be predicated upon the occurrence of the automobile collision which was the immediate cause of the death of decedent, and that result should be reached even if it be assumed that under the charter provision the injury must have arisen out of and occurred in the course of employment. The undisputed facts show a series of compelling circumstances. Decedent became ill from a heart attack as the direct result of the struggle which occurred in the course of and while he was performing one of the duties incident to that employment, the taking into custody and retention of a person violating the law. As the direct result of the illness, decedent was forced to return home before the expiration of his regular period of duty; the automobile collision also occurred before the expiration of that time. He was directed by his superior to return to his home by reason of that illness. It was known that his means of transportation to his home was his car. While going to his home he would necessarily encounter the hazards incident to operating a motor vehicle on the public streets. When an employee becomes ill or incapacitated as the result of an injury which occurs in or arises out of the course of his employment, it may justly be said that he is still in the course of his employment when en route, at his employer's direction, from his place of employment to a place of safety or where he may receive care and treatment for the injury or illness during his regular hours of labor. An injury received while so en route certainly is an incident of the employment, as the injury initially received in the employment caused him to be on the way to receive attention. The mere fact that he used his automobile in seeking refuge is of no consequence; that was done with the implied assent of the employer inasmuch as the latter directed him to go home, knowing he would use that means of transportation. It may fairly be said that while so en route he is on the business of both the master and his own.

Principles applicable to workmen's compensation cases where it is necessary to show that the injury arose out of or occurred in the course of the employment, support the foregoing. An employee engaged in outside work does not step out of the course of his employment while seeking shel-

ter from a storm. (*Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 Pac. 754].) The case falls within the rule that those acts of the employee necessary to his comfort, convenience, safety or welfare while at work are incidental to his employment, and an injury sustained in the performance of such acts arises out of and occurs in the course of employment. (*Whiting-Mead Com. Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 Pac. 1105, 5 A. L. R. 1518]; *County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal. App. 736 [265 Pac. 362].) For illustration, in the case of *County of Los Angeles* v. *Industrial Acc. Com., supra,* an injury received by an employee while going from his place of employment to a service station to get water for a fellow employee who had fainted, was held to have arisen out of and occurred in the course of employment. That principle may well apply where the employee receives an injury in the course of his employment that compels him to seek treatment and care or a place of refuge away from his place of employment. In either case the act of seeking treatment, care or refuge is incidental to the employment and arises out of it.

The so-called going and coming rule is not an obstacle to that conclusion. It has many exceptions, and under the circumstances here involved, it has no application. The employee is not going home after his day's work is completed. Rather he is compelled by reason of an injury which was incurred during the performance of his duty to seek treatment, care or refuge away from his place of employment.

For the foregoing reasons there was a clear abuse of discretion on the part of the pension board in refusing petitioner's application for a pension, and the superior court should as a matter of law, upon the undisputed evidence, have granted the writ of mandate prayed for by her.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., and Traynor, J., concurred.

Respondents' petition for a rehearing was denied August 24, 1942, and the following opinion was thereupon rendered:

THE COURT.—By petition for rehearing in this cause respondents contend that "this court has erred in determining

this appeal upon the strength of statements and opinions expressed in affidavits filed in support of a motion for a new trial,'' contrary to the rule announced by this court in *Lucci* v. *United Credit & Collection Company,* 220 Cal. 492 [31 P. (2d) 369]. This contention cannot be sustained for the reason that on the last page of the transcript the following stipulation appears: ''We hereby stipulate the foregoing (pages 22 to 77, inclusive) to be a full, true and fair transcript of the papers, and all of the papers, used or considered on the hearing *at the trial of the within cause* (in addition to the record contained in the clerk's transcript of the judgment roll herein).'' The affidavits referred to in the opinion of this court are embraced within the pages contained in the record referred to in the above-mentioned stipulation, and the facts contained in such affidavits were discussed in the briefs of both parties without any suggestion that such facts could not be considered by this court because they were contained in affidavits on motion for a new trial.

Other contentions made in respondents' petition for a rehearing are disposed of in the opinion of this court.

Respondents' petition for a rehearing is denied.

Edmonds, J., voted for a rehearing.