[L. A. No. 18601. In Bank. Aug. 3, 1943.]

RUBY IDELE GOODRICH et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Harold A. McCabe for Petitioners.

Everett A. Corten, J. Gould, Fred G. Goldsworthy, J. L. Kearney and Herbert S. McCartney for Respondents.

CARTER, J.—Petitioners, dependents of Claude E. Goodrich, deceased, seek annullment of an order of the Industrial Accident Commission denying compensation for his death as the result of an injury which they assert arose out of and occurred in the course of his employment.

Goodrich was employed on a monthly basis by the H. L. Whiston Drilling Company, engaged in drilling oil wells, as drilling superintendent. The commission found that drilling operations of the employer were being conducted at a place six-tenths of a mile from the employer's office and one and seven-tenths miles in the same direction from Goodrich's home; that Goodrich had no regular hours of duty and was subject to call at all hours of the day and night; that Goodrich "carried on much of the business of the employer from said employee's home by means of the telephone there located," and he was authorized by the employer in the discretion of the employee to conduct the employer's business at "any place where the same could be conveniently conducted and was authorized to conduct the business of said employer from and at either the office of said employer or the home of said employee among other places"; that there was a telephone in the office; that at the time of the injury to Goodrich which resulted in his death he "was on his way from said oil well to his said home, having proceeded past said employer's office enroute. Said employee's sole purpose in said journey

was to inform his wife of the probability that he would work at said oil well throughout the night and it was said employee's intention at said time and place after completing said errand to return to said oil well.''

Goodrich left his home about 7 p. m. the day of the injury in the car furnished by his employer to go to the above-mentioned place of work on a ''fishing'' job, stating to his wife that he would possibly be gone all night and that she should not worry. The work in progress required the removal of a casing from the well being drilled. A cutting tool for that purpose had been ordered between 7 and 8 p. m., and was supposed to arrive at the well in one to one and one-half hours. Goodrich had remained at the office of Owens, the man from whom the tool was ordered, for about one and one-half hours waiting for it. When he left for the well it was understood that Owens would bring the tool there when it arrived. Shortly before 10 p. m. Goodrich and the workmen under him were waiting at the well for the tool to arrive. Mr. Gieck, who was observing the operations, testified that Goodrich said he wished to go home and inform his wife that he would be working all night; that he did not want to telephone her as it would frighten her and awaken his minor child who had had a tooth pulled. The night was cold and Gieck, having a heater in his car, offered to take Goodrich home. His offer was accepted and they proceeded directly toward Goodrich's home. About a half a block therefrom the accident occurred which resulted in the death of Goodrich.

The employer, who was at the well shortly before 10 p.m., testified that Goodrich said to him that he was going home for the above-mentioned purpose and expected to be back by the time the tool arrived. To the employer's suggestion that because of the cold weather Goodrich go to the office and wait for the cutting tool and telephone his wife from there, Goodrich made no reply. Several of the employees at the well in Goodrich's charge testified that when he left he said he was going to telephone to ascertain why the tool had not arrived.

Goodrich had no regular hours, came and went as he pleased and exercised considerable discretion in the performance of his duties. He transacted some of his employer's business from his home and used his telephone there for that purpose.

There are many acts of an employee for his personal

convenience, comfort or welfare, the doing of which do not necessarily take him out of the course of his employment, even though done away from the premises of the employer. (*California Cas. Ind. Exch.* v. *Industrial Acc. Com.*, 21 Cal. 2d 751 [135 P.2d 158].) Various instances of that character have been considered by the appellate courts: Drinking wine because of indisposition (*Elliott* v. *Industrial Acc. Com.*, 21 Cal.2d 281 [131 P.2d 521]; smoking (*Whiting-Mead Com. Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518]); going to obtain a slicker to wear in the performance of his duty (*Western Pacific R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754]); going to obtain an overcoat (*Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 P.2d 911]); going into a hallway to obtain fresh air (*F. W. Woolworth Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 634 [111 P.2d 313]); going to obtain water for a fellow employee who had fainted (*County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal.App. 736 [265 P. 362]); returning from purchasing a package of cigarettes for employee's own use (*Western Pipe etc. Co.* v. *Industrial Acc. Com.*, 49 Cal.App.2d 108 [121 P.2d 35]); domestic servant sewing a hem on her dress (*Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089]).

It has been said that even though an employee may be going to or from his place of employment on a mission personal to himself if he is also on a substantial mission of his employer which is the major factor in the movement, he may still be said to be within the course of his employment. (*Western States Gas & Elec. Co.* v. *Bayside Lumber Co.*, 182 Cal. 140 [187 P. 735]; *Ocean A. & G. Corp.* v. *Industrial Acc. Com.*, 132 Cal.App. 207 [22 P.2d 537]; *Gagnebin* v. *Industrial Acc. Com.*, 140 Cal.App. 80 [34 P.2d 1052]; *Fenton* v. *Industrial Acc. Com.*, 44 Cal.App.2d 379 [112 P.2d 763].)

If it be assumed that the instant case does not fall strictly within either one of the foregoing rules, when they are considered together in light of the facts established, it is clear that the death occurred in and arose out of the course of employment. Goodrich was on call twenty-four hours a day. He held a position where he exercised considerable discretion in the performance of his duties. He conducted some of the business of his employer from his home, using the telephone there and was reimbursed for long distance calls. **Working**

at night on the occasion in question, it was to be anticipated that he might return to his home which was only a short distance away to advise his wife that he was going to work all night, although he had previously advised her that he probably would be so engaged. Although his employer suggested he telephone his wife from the office, he did not forbid Goodrich to return home to speak to his wife. Several witnesses stated that Goodrich said he was going home to telephone with regard to the delivery of the cutting tool which was required before work could proceed. The making of.such a call would be in the line of his duty, and the mere fact that he chose his home from which to call rather than the office was not an act in excess of his discretion in the matter. True, his employer and Gieck testified that Goodrich said he was returning home to advise his wife concerning the time he would be away, but that did not exclude the other purpose of telephoning in regard to the cutting tool. The trip had dual purposes. It cannot be doubted that if under the circumstances he had been returning home because operations were completed, the injury would have arisen out of and occurred in the course of employment. (See *State Compensation Ins. Fund* v. *Industrial Acc. Com.*, 89 Cal.App. 197 [264 P. 514] ; *California Casualty Indem. Exch.* v. *Industrial Acc. Com.*, 5 Cal.2d 185 [53 P.2d 758].) It was anticipated that Goodrich would be traveling on the streets in an automobile inasmuch as he continuously did that in the course of his duties and the employer furnished him a car which he kept at his home. The fact that he was riding in Gieck's car at the time is immaterial inasmuch as his duties included the use of automobile transportation. We conclude therefore that the only reasonable inference flowing from the evidence is that Goodrich's death arose out of and occurred in the course of his employment. ■ This conclusion must follow in light of the rule that any reasonable doubt as to whether the act of the employee is contemplated by the employment should be resolved in favor of the employee in view of the policy of liberal construction of the workmen's compensation laws. (*Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089].)

Goodrich's dependents filed their application for compensation on November 26, 1940. A hearing was thereafter had resulting on March 4, 1941, in an award to them. On March

20, 1941, the employer's insurance carrier petitioned for a rehearing which was granted on May 6, 1941. Apparently no other evidence was taken and a decision on rehearing was made on May 23, 1941, determining that the death did not occur in or arise out of the course of employment. On February 13, 1942, applicants filed a petition to reopen the case on the grounds that the death occurred in the course of employment and to produce new evidence that the decedent had stated that he was going home to telephone about the cutting tool. That petition was denied on March 17, 1942. On April 6, 1942, applicants filed a petition for a rehearing based upon the insufficiency of the evidence to support the order, and newly discovered evidence. On June 5, 1942, the commission granted that petition and the matter was set for further hearing. A further hearing was had at which additional evidence was taken. On July 22, 1942, applicants filed a petition for a further hearing to produce evidence requested by the referee. It was produced. On August 6, 1942, the commission made an order reciting that: "Rehearing having been granted herein, and all parties having appeared, and applicant having produced and offered new and additional evidence upon material issues herein, and newly-discovered evidence which could not with reasonable diligence have been produced and offered upon the original proceedings herein; and . . . It Is Ordered that the above-entitled matter be and the same hereby is reopened.

"Applicant having petitioned for further hearing herein, and having made an offer to prove at said further hearing the facts set forth in the signed statement of Charles M. Owens attached to said petition for further hearing as Exhibit 'A', and no good cause for said further hearing appearing, . . . It Is Ordered that said signed statement of Charles M. Owens be and the same is hereby admitted in evidence herein, and said petition for further hearing dated July 22, 1942, be and the same is hereby denied; and that the Order Denying Applicants' Petition to Reopen dated March 17, 1942, be and the same is hereby rescinded, and the Decision on Rehearing dated May 23, 1941, be and the same is hereby amended to read as follows." The amendment set forth the facts heretofore mentioned as found. On August 20, 1942, applicants petitioned for a rehearing which was denied on

August 27, 1942. Petition for a review was filed on September 25, 1942.

Respondent commission contends that it was without jurisdiction to entertain or pass upon the petition for rehearing filed on August 20, 1942; that the final decision of the commission was made by its order of August 6, 1942, and petitioners were required to file their petition for review in the District Court of Appeal within 30 days thereafter, which they failed to do. They petitioned for a rehearing and filed their petition for a review within 30 days after its denial.

■ Generally, if a party does not prevail on the original hearing and his petition for a rehearing is denied, he may not again petition for a rehearing. He must seek relief in the courts. (See Labor Code, sec. 5950; *Crowe Glass Co.* v. *Industrial Acc. Com.*, 84 Cal.App. 287 [258 P. 130]; Campbell, Workmen's Compensation, vol. II, p. 1324; *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 [228 P. 654]; *Mustain* v. *Industrial Acc. Com.*, 130 Cal.App. 447 [19 P.2d 1031].)

■ However, if one party prevails in the original hearing and on rehearing the other party prevails, the first party may petition for rehearing of the order made on rehearing because he has for the first time become the aggrieved party under section 5900 of the Labor Code (*Dalsheim* v. *Industrial Acc. Com.*, 215 Cal. 107 [8 P.2d 840], dictum; *Brunau* v. *Industrial Acc. Com.*, 135 Cal.App. 277 [26 P.2d 672]), though it may be that such petition is not a condition precedent to court review. (*Dalsheim* v. *Industrial Acc. Com.*, *supra.*)

Under the foregoing rules petitioners could have petitioned for a rehearing within twenty days after the decision of May 23, 1941. However, rather than do that, on March 17, 1942, they filed a petition to reopen under section 5803 of the Labor Code which provides: "The commission has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the commission may rescind, alter, or amend any such order, decision, or award, good cause appearing therefor.

"Such power includes the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor such

award was made has either recurred, increased, diminished, or terminated.'' Their petition was denied, whereupon petitioners petitioned for a rehearing and it may fairly be said that such petition was for a rehearing of the denial of the petition to reopen inasmuch as in its decision on August 6, 1942, it rescinded that order of denial. ▮ Application for rehearing may be made from an order denying relief under section 5803 because it is a final order of the commission in which the petitioner is aggrieved. (See *Ingram* v. *Department of Industrial Relations,* 208 Cal. 633, 637 [284 P. 212].)

After granting the petition of April 6, 1942, new evidence consisting chiefly of the testimony of the witnesses that Goodrich left with Gieck to telephone with regard to the cutting tool, was received. Thereafter, the order of August 6, 1942, was made amending the order of May 23, 1941, to make the more explicit findings heretofore set forth with respect to Goodrich's powers and duties, but denying compensation. It is true that that order of August 6, 1942, purported to affirm the order of May 23, 1941, but the commission could not in this manner deprive itself of jurisdiction to entertain a petition for a rehearing if it had such jurisdiction. ▮ The question is, therefore, whether the commission may entertain a petition for rehearing after making an order reopening a case and receiving and considering new evidence, which petition for rehearing is presented by the party upon whose petition the matter was reopened and further evidence taken, but comes to the same conclusion originally reached. It has power to entertain such a petition because it considered new and additional evidence, the decision therein is in effect a new decision on new facts, and the party although failing to prevail on the last occasion as he had on the first is entitled to a reconsideration by the commission of its opinion on the new evidence. The very purpose of a rehearing is to have a reconsideration of a matter which has been theretofore considered only on one occasion. The right to have a reconsideration of the case where new facts and evidence were produced on the rehearing was not considered in *Crowe Glass Co.* v. *Industrial Acc. Com., supra.* That case proceeded upon the theory that there would be no end to the proceedings before the commission if successive rehearings could be entertained. Such situation does not exist where a losing party petitions for and obtains a rehearing on the ground of newly discovered evidence, which evidence is produced and consid-

ered by the commission but results in the same conclusion. If the losing party again petitions for a rehearing, that is, a reconsideration of the evidence before the commission, in a case where no new evidence is presented, and it is denied, he cannot again petition for a rehearing, because the commission in such a case is not requested to reconsider new and different evidence. In *Harlan* v. *Industrial Acc. Com.*, *supra*, the court, as pointed out in the dictum in *Dalsheim* v. *Industrial Acc. Com.*, *supra*, merely held that where on granting a petition for a rehearing the commission reverses itself, the losing party on rehearing need not petition for a rehearing before seeking relief in the courts, but nevertheless, the commission has jurisdiction to entertain a petition for a rehearing. *Beronio* v. *Industrial Acc. Com.*, 86 Cal.App. 588 [260 P. 1104], involved a second petition for a rehearing on the ground of newly discovered evidence which had not been mentioned in the first petition for a rehearing which was denied, and petitioner had sought relief in the courts before a ruling was made on his second petition for a rehearing, and hence the court had acquired jurisdiction. *Mustain* v. *Industrial Acc. Com.*, *supra*, did not concern a situation in which a petition for rehearing was filed after a second denial of compensation on rehearing where new evidence was considered.

The order is annulled.

Shenk, J., Curtis, J., and Schauer, J., concurred.

TRAYNOR, J.—I dissent. The decision of the commission on August 6, 1942, which in effect reaffirmed its decision of May 23, 1941, was on the rehearing granted petitioners on June 5, 1942. Section 5950 of the Labor Code provides, "Within thirty days after the petition for a rehearing is denied, or, *if the petition is granted, within thirty days after the rendition of the decision on the rehearing,* any person affected thereby may apply to the supreme court or to the district court of appeal of the appellate district in which he resides, for a writ of review, for the purpose of inquiring into and determining the lawfulness of the original order, decision or award, or of the order, decision, or award on rehearing." (Italics added.) Under this provision the final decision of the commission was made on August 6, 1942. (*Ingram* v. *Dept. of Industrial Relations*, 208 Cal. 633, 636 [284 P. 212]; *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352, 365 [228 P.

654] ; *Crowe Glass Co.* v. *Industrial Acc. Com.*, 84 Cal.App. 287, 293 [258 P. 130] ; *Beronio* v. *Industrial Acc. Com.*, 86 Cal.App. 588, 590 [260 P. 1104] ; *Mustain* v. *Industrial Acc. Com.*, 130 Cal.App. 447, 448 [19 P.2d 1031].) The petition for writ of review was not filed within thirty days thereafter and for that reason should not be considered. (*Neal* v. *Industrial Acc. Com.*, 36 Cal.App. 40 [171 P. 696] ; *North Pacific Steamship Co.* v. *Industrial Acc. Com.*, 34 Cal.App. 488 [168 P. 30].) Since the decision on rehearing made no change in the award there was no basis for further reconsideration by the commission. (*Cf. Dalsheim* v. *Industrial Acc. Com.*, 215 Cal. 107 [8 P.2d 840] ; *Brunau* v. *Industrial Acc. Com.*, 135 Cal.App. 277 [26 P.2d 672].)

Edmonds, J., concurred.

Respondent's petition for a rehearing was denied September 1, 1943. Edmonds, J., and Traynor, J., voted for a rehearing.