TAYLOR, AS FATHER AND NEXT FRIEND OF LESLEY TAYLOR, A MINOR *v.* TRADERS AND GENERAL INSURANCE COMPANY

No. 43110          June 8, 1964          164 So. 2d 905

*Smith & Smith,* Poplarville, for appellant.

*P. D. Greaves, J. C. Seaman, Jr.,* Gulfport, for appellees.

Lee, C. J.

Lesley Taylor, by his father and next friend Iris Taylor, filed his bill of complaint against Traders and General Insurance Company, a corporation. It was charged that, while acting in the course and scope of his employment with King & Sheets Corporation, in Louisiana, he sustained a permanent injury and disability; that the defendant was the insurer of his employer; and that he was entitled to the benefits of the Louisiana Workmen's Compensation law. He prayed for an award, medical expenses, and all benefits to which he was entitled under the above stated law.

The defendant, in its answer, denied all of the material allegations of the bill and prayed for its dismissal.

During the months of July and August 1961, Lesley Taylor was doing brick work on a contract of his uncle, Sam Spiers, with King & Sheets Corporation, under his foreman, George Spiers, on a project in New Orleans. The Spiers, and other members of the crew, including Lesley, were "just about to wind up the day's work". It was a hot day, and while one of the men was finishing a corner of the brick work, the others were sitting down in the driveway, talking and "acting a fool". According to one version, Taylor said he could whip Spiers, and, as they grabbed for each other and were wrestling, Taylor fell down. According to another version, Spiers was sitting on a five-gallon bucket. Taylor walked up behind him, and said, "You old bald-headed————I am going to throw you," at the same time grabbing him around the body. Spiers then caught Taylor around the neck, flipped him over, and he fell on his back. As he got up, Taylor said "you broke my back". Another version was that Taylor said "Look a here, old man, I am going to bust your end", and that Spiers flipped him over on his back. There was no ill-feeling, enmity, or argument between the parties. There was evidence that the complainant, at the time of the trial, was still disabled and unable to perform any work as a result of the alleged injury to his back.

At the close of the evidence, the learned Chancellor made a finding of fact in which he held that the injuries, complained of, resulted from horseplay, altercation, or a wrestling incident between Taylor and George Spiers; that these injuries and resulting disability prevented the complainant from returning to his prior work or employment without further medication, and/or surgery; that the defense of Spiers thereto was not unreasonable; but that there was no liability for the injury and dis-

ability under the Louisiana Workmen's Compensation law.

A decree, in accordance with the finding of the court, was entered, and the complainant appealed.

The sole issue before the Court under the assignment of errors and briefs, is whether or not benefits under the Workmen's Compensation law are available to the appellant under the facts and circumstances of this case.

The incidents, out of which this litigation developed, occurred in the State of Louisiana, and the rights and benefits of the appellant, if any, must be governed by Louisiana law. Consequently, the Court must consider the Louisiana statutes and court decisions, for a determination of this matter.

Malone in his text on Louisiana Workmen's Compensation Law and Practice, 1951 Ed., at page 241 of Section 195, said: "Most courts everywhere today have recognized that practical joking and rough play are to be expected with regularity where men are required to work side by side. One Louisiana court has appropriately remarked: 'It is not to be supposed that a crew of men could be obtained unless some of them during working hours would play practical jokes on their fellow workmen, especially if such men were red-blooded Americans.' This observation, alone, affords ample reason to conclude that the risk of horseplay is one that arises out of the employment." At page 242 of the above text, he pointed out that, while in none of the Louisiana cases at that time had it appeared that the claimant was the aggressor in the frolic, the best considered opinions in other jurisdictions have concluded that the initial aggression of the victim is immaterial.

In like manner, the decisions of the Louisiana courts had held that an employee, who was the aggressor in an assault upon a fellow worker, could not recover under the compensation law. The rationale for these decisions was based on the provisions of LSA-R.S. 23: 1081(1), which reads: "No compensation shall be allowed for an

injury caused (1) by the injured employee's wilful intention to injure himself or to injure another * * *."

But in the case of Velotta v. Liberty Mutual Insurance Co., 126 So. 2d 445, and 132 So. 2d 51, that rule has been materially changed. The significant facts in that case were as follows: Velotta, a 58-year old white male, weighing about 120 pounds and slightly over 5 feet in height, had been in the employ of Washington-Youree Hotel in Shreveport for approximately 8 years, maintaining the white and colored employees' dressing rooms and rest rooms. Eli Bailey, about 6 feet tall and weighing over 150 pounds, a colored employee, had some dirty clothes which he desired to deposit in the cart that Velotta usually provided for that purpose. Bailey asked: "Mr. Shorty, is your buggy outside the door?" Velotta replied: "Don't call me no Shorty, boy." Bailey's counterstatement was "I won't call you no Shorty if you don't call me no Boy." Thereupon Velotta slung a pair of trousers that struck Bailey across the face, and Bailey hit Velotta in the face with his fist, causing a serious injury.

In the first instance, the Court of Appeal denied recovery to Velotta which had been awarded by the trial court. In doing so, it followed and cited several previous cases. But when the case was appealed to the Supreme Court of Louisiana, the second instance, that court reversed the judgment of the Court of Appeal and awarded recovery. In doing so, it said: "It is clear that the action of Velotta here could certainly not be classified as both premeditated and tinged with some degree of malice, which 'wilful intention' as used in the statute seems clearly to imply. It appears instead that his actions were impulsive or the result of an intinctive act — the opposite of intentional or premeditated — and hence not 'wilful'. In the relationship between fellow employees, it is inevitable that their emotions will cause friction between them; and if on such oc-

casions impulsive action provokes retaliation which causes injury, that impulsive action should not preclude the assertion of a claim under the Act. The use of the word 'Shorty' by Bailey in referring to Velotta, a much older man, gave normal cause for resentment, not only in the ridicule implied in the appellation itself, but, it is not unreasonable to assume, in the tone and manner of its use, and in its source, coming from a young Negro and directed to a much older white man. Therefore, when Velotta responded as he did, his actions did not manifest 'wilful intention' to injure another, although those actions may not have been entirely blameless under the circumstances. The question is not one of comparative fault between Velotta and Bailey; our inquiry is whether Velotta's actions were of such a nature that the Compensation Act would deny him the broad coverage of its provisions. *The fundamental policy of the Act in departing from fault as a basis of liability and of defense, except as specified therein, is inconsistent with any notion that recovery is barred by misconduct, fault, negligence or illegality, which amounts to no more than impulsive, emotional misconduct growing out of the duties of the employment and the incidental and necessary relationship to other employees.* Hartford Accident & Indemnity Co. v. Cardillo, supra.'' (Emp. Sup.)

Keeping in mind the fundamental policy of the Workmen's Compensation Act of Louisiana as pointed out above by the Supreme Court of that state, it is difficult indeed to see how a recognizable difference in the administration of justice can be found between liability for assault and liability for horseplay under the decisions of Louisiana. Each of these instances grew out of the hazard of the work when red-blooded men are brought together.

It seems incomprehensible that, since liability was imposed in the Velotta case, it could then be denied in

the present case. In the Velotta case, by striking Bailey in the face with the trousers, in anger rather than fun, Velotta initiated the altercation from which he suffered injury. In the present case, by telling Spiers he was going to "throw" him or "bust your end" and grabbing Spiers around the body in fun, Taylor initiated the horseplay, or altercation, or wrestle from which he sustained injury. It would be ridiculous in the extreme to say, on the one hand, that, if two workmen, during their employment, suddenly become angry as a result of some incident and one commits an overt act of aggression, but without the wilful intention to injure himself or another, and his adversary retaliates with force and inflicts injury upon his assailant, there is liability under the Workmen's Compensation law; and then, on the other hand, say that, another worker, in fun and not in anger, initiates an act which produces bodily contact and results in injury to the one, who started the horseplay or whatever the fracas may be called, in such event the injured workman is entitled to no benefits under the Workmen's Compensation law. In other words, injury without anger is tabu, but injury with anger is compensable.

The Court is of the opinion that the disability, which the appellant sustained, arose in the course of his duty, while at work, and that he is entitled to the benefits of the Louisiana Workmen's Compensation Act. It, therefore, follows that the learned trial judge misconstrued the law in this case, and that the cause must be reversed and a decree for the appellant should be entered here, and the cause remanded to the trial court for the ascertainment and fixing of all benefits, to which he is entitled, under the Louisiana Workmen's Compensation Act.

Reversed and decree here for appellant, and remanded to the trial court with directions.

*Ethridge, McElroy, Rodgers and Patterson, JJ.,* concur.