82 Cal.App.3d 894 (1978)
147 Cal. Rptr. 546
WILLIAM G. HODGES, Petitioner
v.
WORKERS' COMPENSATION APPEALS BOARD and ELMORE MOTORS-TOYOTA, Respondents.
Docket No. 19676.
Court of Appeals of California, Fourth District, Division Two.
July 18, 1978.
*897 COUNSEL
Darlene Weinhold and Edwin H. Whitney for Petitioner.
Zonni, Ginocchio & Taylor and Ralph J. Ginocchio for Respondents.
OPINION
KAUFMAN, J.
Petitioner (applicant) seeks review of an order of the Workers' Compensation Appeals Board (Board) denying reconsideration of a decision by the judge that applicant's injury did not arise out of and occur in the course of his employment. This court denied applicant's petition for writ of review without opinion. On applicant's petition, the California Supreme Court granted hearing and retransferred the case to *898 this court with directions to issue a writ of review. The writ issued as directed.
The pertinent facts will be stated in our discussion of the several contentions.
First, applicant contends the finding that his injury did not arise out of and occur in the course of his employment (Lab. Code, § 3600) is not supported by substantial evidence on the whole record. (Lab. Code, § 5952; Lamb v. Workmen's Comp. Appeals Bd., 11 Cal.3d 274, 281 [113 Cal. Rptr. 162, 520 P.2d 978]; Garza v. Workmen's Comp. App. Bd., 3 Cal.3d 312, 317 [90 Cal. Rptr. 355, 475 P.2d 451].) The contention is without merit and is based on a view of the evidence not only most favorable to applicant but, in part, finding no support in the record.
Applicant, 61 years of age, had been employed by Elmore Motors  Toyota about two years. At the time of his injury he was employed as a service advisor. Between 6:30 and 7 p.m. on April 14, 1977, applicant fell and injured his left leg while engaged in sparring with a fellow employee, Rudy Casillas. Three persons were present: applicant, Mr. Casillas and Dennis Rofoli, another fellow employee. All three testified at the hearing.
Mr. Casillas testified he is 49 years old and employed by Elmore Motors  Toyota as a salesman. Between 6:30 and 7 p.m. he was sitting at his desk in the sales room. Dennis Rofoli was sitting at another desk in the sales room. Rofoli told Casillas that Rofoli had heard that applicant had been a boxer. Casillas and Rofoli started to walk out the back door of the sales room. They saw applicant some 50 feet away talking to a mechanic. Mr. Casillas said in a loud voice to the applicant, "I didn't know you were a boxer." Applicant answered, "I done a little boxing." Applicant traveled some 50 feet from the service department to where Casillas and Rofoli were standing outside the back door. Applicant and Casillas started sparring. They put up their hands simultaneously. Their hands were closed. At the commencement of the sparring activity, Casillas was first backed up by applicant's aggressive movements. Then Casillas started jabbing and applicant was backing up when he fell. Applicant and Casillas were "just fooling around." No contact was made by either party. They had never had any argument or disagreement. Casillas testified that he had previously engaged in athletic activity such as throwing a football around on the employer's premises but stated: "We *899 never do it around when Mr. Elmore is in." He testified he had never before engaged in sparring on the employer's premises.
Mr. Rofoli's testimony was generally corroborative of that of Mr. Casillas. In particular, he testified he believed the applicant went on the offensive first and that when Casillas responded and took the offensive, applicant tripped and fell down. He was apparently uncertain who first raised their hands. In one part of his testimony he indicated applicant raised his hands first; in another part he indicated Casillas raised his hands first; and in yet another part he indicated the two raised their hands at the same time. He stated he had participated in "throwing a ball" on the employer's premises.
Applicant testified that about 6:45 p.m. on April 14, 1977, he was walking to the front office from his service department to notify them he was about to close the service department, when Mr. Casillas said to him he had heard applicant had a little boxing experience. Casillas then said, "let's see how good you were." At that point Casillas put up his hands in an open-hand position and came toward the applicant. When Casillas got near applicant, applicant put up his own hands to protect himself. Casillas started to make passes at the applicant. On one such pass the applicant turned and fell down on his left side and was injured. There was absolutely no animosity between Casillas and him. While he thought he might get slapped, he did not think Casillas was trying to hurt him. It was about a minute or a minute and a half between the time Casillas first put his hands up and the time applicant fell. Applicant denied making any forward thrusting motions during this time. During his two years' employment at Elmore Motors  Toyota, applicant had observed footballs and tennis balls being thrown around, but he had never been involved in such activities. When asked whether such activities were engaged in with the permission of the owner or manager of the company, he responded: "Not that I know of." He had never before engaged in sparring on the employer's premises and testified sparring was not allowed.
The judge concluded that applicant's injury resulted from his participation in horseplay and was therefore not compensable. (1) It is the rule in California and in a great majority of other jurisdictions that injury suffered by an employee while engaged in horseplay is not compensable. (Dalsheim v. Industrial Acc. Com., 215 Cal. 107, 111-114 [8 P.2d 840]; Ehrhart v. Industrial Acc. Com., 71 Cal. App. 295, 298 [234 P. 908]; see Pacific Emp. Ins. Co. v. Ind. Acc. Com., 26 Cal.2d 286, 291 [158 P.2d 9, *900 159 A.L.R. 313]; Argonaut Ins. Co. v. Workmen's Comp. App. Bd., 247 Cal. App.2d 669, 679-681 [55 Cal. Rptr. 810]; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) §§ 8.03[6][c], 10.03[1][d]; 1 Larson, Workmen's Compensation Law, §§ 23.00, 23.30 [text preceding fn. 10 and cases cited in fn. 10].) Injury to a nonparticipating employee resulting from the horseplay of fellow employees is generally compensable.[1] (Pacific Emp. Ins. Co. v. Ind. Acc. Com., supra, 26 Cal.2d at pp. 291, 294; see Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra, 247 Cal. App.2d at pp. 679-680; Hanna, op. cit. supra; 1 Larson, Workmen's Compensation Law, §§ 23.00 and 23.10.)
(2) Apparently in an attempt to bring himself within the classification of "nonparticipant," applicant asserts his participation in the sparring horseplay was "involuntary." He asserts in essence that he did no more than take defensive, instinctive action in response to the conduct of Casillas. These assertions are ill-founded. In part they find no support in the evidence, and in part they are based entirely on applicant's testimony. There is no evidence at all applicant's actions were instinctive. Neither does the evidence establish applicant's claim that all he did was take defensive action in response to the conduct of Casillas. According to the testimony of both Casillas and Rofoli, it was applicant who first took the offensive in the sparring and applicant did not fall until Casillas later took the offensive and applicant was backing up. By applicant's own testimony, the sparring went on for a minute or a minute and a half, and a reading of the transcript indicates the judge simply did not believe that applicant did nothing more in that time than attempt to take evasive action. The evidence amply supports the conclusion applicant was a willing participant in the horseplay.
Applicant attempts to equate the situation at hand with an altercation as to which he asserts only the "initial physical aggressor" would be *901 denied compensation. (See Lab. Code, § 3600, subd. (g); Mathews v. Workmen's Comp. Appeals Bd., 6 Cal.3d 719 [100 Cal. Rptr. 301, 493 P.2d 1165].) He contends it is illogical to deny compensation in altercation cases only to the "initial physical aggressor" and deny compensation in horseplay cases to all participants, not just the "initial physical instigator."
Applicant cites no authority for making a distinction in horseplay cases between the "initial physical instigator" and other participants. However, even if such a distinction were recognized it would not benefit applicant in this case, for the testimony of Casillas and Rofoli just referred to is ample to support the conclusion that applicant was in fact the "initial physical instigator" of the sparring even though Casillas might be classified as the "verbal instigator."
In any event, it is improvident to attempt to compare the rule denying compensation to the "initial physical aggressor" in the altercation cases with the ruling denying compensation to all participants in the horseplay cases. The bases for the two rules are completely disparate. The basis for the horseplay rule is that the injury does not arise out of the employment (Ehrhart v. Industrial Acc. Com., supra, 71 Cal. App. at p. 298; see 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) §§ 8.03[6][c] and 10.03[1][d]) and does not occur in the course of employment (see 1 Larson, Workmen's Compensation Law, § 23.61). (3) Compensation is denied the "initial physical aggressor" in altercation cases as a matter of legislatively declared policy even if the altercation and the injury arose out of and occurred in the course of the employment. (Lab. Code, § 3600; see Mathews v. Workmen's Comp. Appeals Bd., supra, 6 Cal.3d at p. 737.) Applicant is mistaken in claiming that only the "initial physical aggressor" is denied compensation in altercation cases. If the altercation and thus the injury did not arise out of and in the course of the employment, no participant in the altercation may recover compensation; denial of compensation is not limited to the "initial physical aggressor." (Lab. Code, § 3600; see 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, §§ 10.03[1][a], 10.03[1][b].)
(4) Additionally, while there are some analytic similarities between the problems presented by altercation cases and those involved in horseplay cases, the two may not properly be equated. Altercations *902 involve interaction between persons characterized by an atmosphere of animosity and a willingness to inflict bodily harm frequently arising from frictions inherent in the employment; horseplay involves no such animosity and usually bears no such relationship to the employment. (See Mathews v. Workmen's Comp. Appeals Bd., supra, 6 Cal.3d at p. 726; Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra, 247 Cal. App.2d at p. 682.) As explained by Larson: "While assaults and horseplay have some features in common, they also have some differences which make it doubtful whether the reasoning of assault cases can be taken over bodily and applied to horseplay. This reasoning pictures the day-to-day enforced contact of divergent personalities under the strains of industrial life, with the not improbable culmination in flare-ups of temper as the direct result of this environment. There is something relentless and inescapable about the emotional explosion that is thus ultimately thrust upon the claimant `aggressor' virtually against his will. But in a horseplay case, the most one can say is that the employment environment provides temptation and opportunity, rather than implacable emotional pressure. Hence, when a prankster sets out to play a practical joke, there is a higher probability that the action may amount to a deliberate and conscious deviation from employment than in the assault cases, in which almost every instance of violence is a spontaneous and unpremeditated reaction to the play of the surroundings on the claimant's temperament." (1 Larson, Workmen's Compensation Law, § 23.50, p. 5-118; see also 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) §§ 10.03[1][a], 10.03[1][b].)[2]
(5a) Next, applicant contends that under the applicable law, the evidence is insufficient to support Board's finding his conduct did not come within an exception to the horseplay rule generally referred to in this state as the "condonation" exception. (See Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra, 247 Cal. App.2d at p. 681.) We recognized this exception in Argonaut: "Another major exception to cases denying recovery under the horseplay rule is the circumstance in which the employer has actual or constructive knowledge of customary or habitual horseplay among his employees. Under such conditions, the employer's knowledge of the horseplay, without voicing objection, makes it a hazard closely associated with the work. Consequently, an injury incurred under such circumstances arises out of the employment and is *903 compensable."[3] (247 Cal. App.2d at p. 680; see also Pacific Emp. Ins. Co. v. Ind. Acc. Com., supra, 26 Cal.2d at p. 290.)
It is probably in connection with this issue that applicant asserts that, "Board has deprived petitioner of his due process rights by applying Labor Code Section 5815 that an undetermined issue is deemed decided adversely to [the] party in whose interest [the] issue was raised." We need not consider the substantive content of this assertion, for applicant's assumption that Labor Code section 5815 was applied is mistaken. There was no undetermined issue. The judge expressly found applicant "did not sustain injury arising out of and occurring in the course of said employment." Presumably, applicant's assertion is directed at that part of the judge's opinion which reads: "The record is completely void on the subject of Mr. Elmore's condonation of this type of activity; the record does include testimony that the employer was never present when this activity occurred on his premises. In the absence of direct evidence, the undersigned has difficulty in concluding that Mr. Elmore would condone sparring between a salesman and a 61-year-old service advisor." However, this statement discloses no undetermined issue. The judge was simply saying there was no evidence of facts that would bring applicant's conduct within the "condonation" exception to the horseplay rule. As we shall see, that is an accurate characterization of the record.
(6) Applicant points out that the Workers' Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202) and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of employee. (E.g., Lamb v. Workmen's Comp. Appeals Bd., supra, 11 Cal.3d at p. 280; Garza v. Workmen's Comp. App. Bd., supra, 3 Cal.3d at p. 317.) Accordingly, he argues, the burden should be placed on the employer to establish affirmatively the inapplicability of the "condonation" exception to the horseplay rule. Applicant is incorrect. The employee bears the burden of proving his injury arose out of and occurred in the course of employment. (Lundberg v. Workmen's Comp. App. Bd., 69 Cal.2d 436, 439 [71 Cal. Rptr. 684, 445 P.2d 300], and numerous cases there cited; Ehrhart v. Industrial Acc. Com., supra, 71 Cal. App. at p. 298.) Liberal construction is no substitute for evidence.
(5b) Moreover, as the judge correctly observed, the record in the case at bench is devoid of evidence that might bring the "condonation" exception into play. In the absence of actual knowledge and condonation *904 by the employer, the prime requisite is that the particular horseplay involved was engaged in so frequently or habitually that it had become customary and might fairly be said to be a regular incident of the employment. (Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra, 247 Cal. App.2d at pp. 680, 682-683; see 1 Larson, Workmen's Compensation Law, §§ 23.41, 23.42.) In the case at bench, there was some evidence that employees had on occasion engaged in throwing a football or a tennis ball but that they never did so when the employer was on the premises. There is no evidence that any employee had ever before engaged in sparring. Mr. Casillas testified he had never done so. Applicant testified that he had never done so and further testified sparring was not allowed.
Applicant's contention that his engaging in horseplay constituted such a minor deviation from the employment that the employer should be held to have assented thereto as a matter of law is more appropriately discussed in connection with applicant's suggestion that the horseplay rule should be revised. We turn now to that question.
(7) Relying on the spirit rather than the letter of Li v. Yellow Cab Co., 13 Cal.3d 804 [119 Cal. Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], applicant contends the "all or nothing recovery now in effect in Workers' Compensation law, which holds that one who engages in horseplay is barred from recovery [is] per se unreasonable...." Neither Li nor its underlying concepts of permitting recovery and assessing liability in proportion to fault have any significant application to the problem at hand. The Workers' Compensation Act establishes a system for compensation of injured employees largely without regard to fault. (Cal. Const., art. XIV, § 4; Mathews v. Workmen's Comp. Appeals Bd., supra, 6 Cal.3d at p. 728 et seq.) Moreover, under the statute, except for problems of apportionment with which we are not here concerned and which are not related to fault, recovery by an injured worker is an all-or-none proposition. Either the injury arose out of and occurred in the course of the employment or it did not.
This, however, does not dispose of applicant's suggestion that the rules governing compensability of injury to an employee resulting from his participation in horseplay should be revised. As applicant indicates, Professor Larson in his treatise on workers' compensation law advocates a somewhat different approach in determining the question of compensability of injury resulting from horseplay. (See 1 Larson, Workmen's Compensation Law, §§ 23.00, 23.60 et seq.) Larson proposes to approach the question as a "course of employment" problem rather than an *905 "arising out of employment" problem (id., at § 23.61) and to determine the "course of employment" question by considering several enumerated factors (id., at § 23.00). "[T]hus, minor acts of horseplay do not automatically constitute departures from employment but may here, as in other fields, be found insubstantial. So, whether initiation of horseplay is a deviation from course of employment depends on [¶] (1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay." (Id., at § 23.00.)
This intermediate appellate court is, of course, required to follow the law laid down by the California Supreme Court in the Dalsheim decision. (Auto Equity Sales, Inc. v. Superior Court, 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937].) In any event, however, it is unnecessary in this case to decide whether the analysis advocated by Larson should be adopted.[4] Even if Larson's approach were adopted, a consideration of the factors suggested by him would not lead to the conclusion that the horseplay engaged in by applicant was so insubstantial a deviation that his injury occurred within the course of employment as a matter of law. It is true the horseplay lasted for but a brief period cut short by applicant's injury and that it did not take him off the employer's premises. However, as the judge correctly observed in his report and recommendation on the *906 petition for reconsideration, which was adopted by Board: "There was no commingling of performance of duty with the horseplay, the deviation was complete, there is no evidence or even any real inference that the practice of horseplay had become an accepted part of the employment and there was certainly no evidence that the nature of the employment would include any horseplay." Indeed, applicant himself testified sparring was not allowed.
(8) Applicant's argument that minor acts of horseplay should be deemed assented to by the employer as a matter of law is not well founded. Even under the approach suggested by Larson, minor acts of horseplay may or may not constitute "departures from employment"; the extent and seriousness of the deviation is but one of the four factors to be taken into consideration. (See, 1 Larson, Workmen's Compensation Law, § 23.00.)
(9) Finally, although the point is not argued, applicant at one point asserts Board failed to state the evidence relied on and specify its reasons in its order denying reconsideration as required by Labor Code section 5908.5. However, in its order denying reconsideration the Board adopted and incorporated the report of the workers' compensation judge which contains an ample recitation of the evidence and statement of reasons for denying reconsideration. The basis for the Board's order is abundantly clear, and the procedure followed satisfies the mandate of Labor Code section 5908.5. (LeVesque v. Workmen's Comp. App. Bd., 1 Cal.3d 627, 634-635 [83 Cal. Rptr. 208, 463 P.2d 432].)
The order denying reconsideration is affirmed.
McDaniel, J., concurred.
TAMURA, Acting P.J.
I respectfully dissent. In my opinion, the result reached by the majority is neither compelled nor just.
The only Supreme Court decision applying the horseplay rule to deny compensation for an injury sustained by a participant is Dalsheim v. Industrial Acc. Com. (1932) 215 Cal. 107 [8 P.2d 840]. Although Dalsheim has never been overruled, its precedential value has been rendered uncertain by the fact that the cases it relied upon were all overruled by the court in Pacific Emp. Ins. Co. v. Ind. Acc. Com. (1945) 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313]. (Joshua Hendy Iron Works v. Ind. Acc. Com. *907 (1946) 74 Cal. App.2d 191, 197-198 [168 P.2d 203]; City and County of San Francisco v. Industrial Accident Commission (1948) 13 Cal.Comp.Cases 20 (writ den.).) The court disapproved the nonparticipants cases on which Dalsheim had relied on the ground that they ignored the realities of industrial life and the "propensities and tendencies of mankind and the ordinary habits of life ... that wherever human beings congregate, either at work or at play, there is some frolicking and horseplay." (Id., at p. 294.) By citing but not overruling Dalsheim, the court in Pacific Emp. Ins. Co. v. Ind. Acc. Com., supra, manifested its intention to preserve the horseplay rule as applied to participants. However, the case strongly suggests that in applying the rule, whether to participants or nonparticipants, courts should take into account the realities of industrial life and the natural propensities of human beings to engage in horseplay.
There has been no Supreme Court decision since Pacific Emp. Ins. Co. v. Ind. Acc. Com., supra, involving the application of the horseplay rule. However, over the years the Industrial Accident Commission has applied the rule to deny compensation to participants in a number of cases, frequently working a manifest injustice to the injured employee. For example, in Klein v. Mitchell and Pacific Employers Ins. Co. (1938) 4 Cal.Comp.Cases 101, a teenager employed to harvest hay was denied compensation for injuries sustained when he fell from a load of hay because he was then engaged in a friendly scuffle with another young employee; in Hocum v. Pacific Employers Insurance Co. (1939) 4 Cal.Comp.Cases 200, a teenage newsboy was denied compensation for injuries sustained in a friendly scuffle with another newsboy while tying newspapers; and in Shephard v. Industrial Accident Commission (1950) 15 Cal.Comp.Cases 140, an employee of an aircraft company was denied compensation for injuries she sustained when she slipped and fell while attempting to entertain fellow workers with a song and dance routine during a rest period.
The trend of recent decisions in a number of sister states is to award compensation for injuries sustained by a participating employee if the deviation is relatively minor and is attributable to the normal human tendency to engage in horseplay. (Crilly v. Ballou (1958) 353 Mich. 303 [91 N.W.2d 493]; Taylor v. Traders and General Insurance Co. (1964) 250 Miss. 416 [164 So.2d 905]; Peet v. Garner Oil Company (Mo. App. 1973) 492 S.W.2d 103, 107; Secor v. Penn Service Garage (1955) 19 N.J. 315 [117 A.2d 12, 15]; Meigel v. General Foods Corp. (1956) 2 App.Div.2d 945 [156 N.Y.S.2d 420]; Ransom v. H.G. Hill Company (1959) 205 Tenn. 377 [326 S.W.2d 659, 663]; see 1 Larson, The Law of Workmen's *908 Compensation (1978) § 23.50; Riesenfeld, Contemporary Trends in Compensation for Industrial Accidents Here and Abroad (1954) 42 Cal.L.Rev. 531, 551-552; Comment (1960) 11 Hastings L.J. 347.) It is time to reexamine and to restate the horseplay rule in California in accordance with the enlightened approach foreshadowed by our Supreme Court in Pacific Emp. Ins. Co. v. Ind. Acc. Com., supra, and as exemplified by the cases cited above from other jurisdictions, particularly the Michigan Supreme Court decision in Crilly v. Ballou, supra. As Justice Wakefield Taylor so eloquently put it in speaking for the Court of Appeal in Kriegler v. Eichler Homes, Inc. (1969) 269 Cal. App.2d 224, 227 [74 Cal. Rptr. 749]: "The law should be based on current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping legal principles abreast of the times. Ancient distinctions that make no sense in today's society and that tend to discredit the law should be readily rejected...."
In the case at bench, the brief sparring match between employees of the automobile dealership at the close of the business day ought to be viewed as a reasonable incident of the employment and the injury resulting therefrom should be held to be a risk to be borne by the enterprise. I believe that we are at liberty to so hold and should.
I would annul the award and remand the matter to the board for further proceedings in accordance with the views expressed.
Petitioner's application for a hearing by the Supreme Court was denied October 12, 1978. Mosk, J., was of the opinion that the application should be granted.
NOTES
[1] The general rule of compensability for injury to a nonparticipant is sometimes referred to as the "nonparticipant exception" to the horseplay rule. (See, e.g., Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra, 247 Cal. App.2d at p. 680.) More accurately, perhaps, no "exception" is involved. The basis for holding injuries resulting to participants in horseplay noncompensable is that such injuries do not arise out of the employment (Ehrhart v. Industrial Acc. Com., supra, 71 Cal. App. at p. 298; see 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) §§ 8.03[6][c] and 10.03[1][d]) and do not occur in the course of employment (see 1 Larson, Workmen's Compensation Law, § 23.61). As to a nonparticipating employee who is injured by the horseplay of fellow employees, in most cases it is simply inaccurate to say the injury does not arise out of and occur in the course of the employment. (Pacific Emp. Ins. Co. v. Ind. Acc. Com., supra, 26 Cal.2d at pp. 291-292, quoting from Leonbruno v. Champlain Silk Mills (1920) 229 N.Y. 470 [128 N.E. 711]; see 1 Larson, Workmen's Compensation Law, § 23.10.)
[2] It is worthy of note that Larson discusses the assault (altercation) problems, including the "aggressor" rule, under the heading "Arising out of Employment" (see 1 Larson, Workmen's Compensation Law, §§ 11.00, 11.15) whereas he discusses the horseplay problems under the heading "Course of Employment" (1 Larson, supra, § 23.00 et seq.).
[3] Larson refers to this rule as the "New York rule." (See 1 Larson, Workmen's Compensation Law, § 23.41.)
[4] It is difficult to argue with Larson's thesis that in some instances horseplay may be sufficiently work related to be compensable and in others not. The "condonation" exception constitutes a recognition of that fact. (Cf. Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra, 247 Cal. App.2d at p. 681.) The validity of his suggestion that the problem should be analyzed as one of "course of employment" as opposed to one of "arising out of employment," however, is less certain. Historically the courts have treated the problem as one relating to "arising out of employment." (See, e.g., Pacific Emp. Ins. Co. v. Ind. Acc. Com., supra, 26 Cal.2d at p. 294, and cases there overruled; 1 Larson, Workmen's Compensation Law, § 23.61.) The "arising out of" factor is primarily concerned with the origin or cause of the injury; the "in the course of" factor is primarily concerned with the time and place of injury and the circumstances in which the injury occurred (i.e., whether the employee was fulfilling his duties or doing something incidental thereto). (See Argonaut Ins. Co. v. Workmen's Comp. App. Bd., supra, 247 Cal. App.2d at pp. 676-677; 1 Larson, Workmen's Compensation Law, §§ 6.00, 14.00.) Depending on the facts, it would appear elements of both "arising out of" and "in the course of" might be involved in horseplay cases. (Cf. Dalsheim v. Industrial Acc. Com., supra, 215 Cal. at p. 111 et seq.) If Larson's suggestion the problem should be resolved as one of "course of employment" is sound, it is difficult to understand why he treats the analytically similar problems of injuries resulting from altercations (assaults) under the head "Arising Out of the Employment." (See 1 Larson, Workmen's Compensation Law. §§ 11.00, 11.15.)